**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CAMELIA LEYVA-UGALDE, MARISOL
ROMERO, JAZMIN DIAZ, & LUZ MARIA
DIAZ, on behalf of themselves and all other
similarly situated persons, known and
unknown,

                 Plaintiffs,

v.

TEN TWENTYEIGHT, INC., d/b/a
MOLLY MAID OF GOLD COAST AND
NEAR NORTH, & ARNOLD MAYSTER,
individually,

            Defendants.

## CLASS ACTION COMPLAINT

Plaintiffs Camelia Leyva-Ugalde, Marisol Romero, Jazmín Diaz, and Luz Maria Diaz ("the

Plaintiffs"), on behalf of themselves and a class of all others similarly situated, known and unknown

(the "Class" or "putative class members"), pursuant to the federal Fair Labor Standards Act, 29

U.S.C. § 201 *et. seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq.*

("IMWL"), the Chicago Minimum Wage Ordinance, Chicago, Ill. Municipal Code, § 1-24 *et seq.*

("Chicago Ordinance"), the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1, *et*

*seq.* ("Wage Act"), and common law principles of tortious interference, against defendants Ten

Twentyeight Inc., d/b/a Molly Maid of Gold Coast and Near North ("Molly Maid,"), and Arnold

Mayster, individually, (collectively, "Defendants") and state as follows:

### INTRODUCTION

1.     This is a hybrid collective and class action for unpaid wages. It is a class action

brought under the Chicago Ordinance and the IMWL, and a collective action brought under the

FLSA, on behalf of the Plaintiffs and the Class, against Molly Maid for willfully unlawful pay practices under the FLSA, IMWL, and Chicago Ordinance.

2. The Plaintiffs and the putative class members allege that Molly Maid improperly paid them less than the minimum wage under the Chicago Ordinance, failed to pay them for all compensable work time under the FLSA, IMWL, and Chicago Ordinance, and failed to pay them for earned overtime pay in violation of all three laws.

3. These violations of the applicable wage and hour laws were deliberate and made with the full knowledge, consent, and participation of Molly Maid owner, Arnold Mayster.

4. Mayster personally ordered the Office Administrator to alter employees' pay records every day to reflect meal breaks that were never actually given.

5. Molly Maids also impermissibly deducted pay for parking and/or speeding tickets from the Plaintiffs' and putative class members' pay.

6. Further, after Romero left Molly Maid to obtain a new job, her new employer contacted Molly Maid for a reference. Molly Maid deliberately provided a disparaging employment reference such that she lost out on the job and was unable to find replacement work.

7. Count I is brought as Collective Action under the FLSA. The applicable Collective Action consent forms are attached as Exhibit A.

8. Counts II through VI are brought on a class-wide basis under Federal Rule of Civil Procedure 23, on behalf of all maids and team leads who have worked for Molly Maid during the prior three years.

9. Count VII is brought on behalf of Marisol Romero, individually.

10. County VIII is brought on behalf of Luz Maria Diaz, individually.

## JURISDICTION & VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 29 U.S.C. §216(b) (FLSA jurisdiction); and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

12.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1), (2) (venue generally), and 29 U.S.C. § 216(b) (FLSA).

## PARTIES

13.     Plaintiff Camelia Leyva-Ugalde is an adult resident of Chicago, Illinois. Leyva-Ugalde worked for Molly Maid, first as a maid, and later as a team lead, from January 2016 through January 2020.

14.     Plaintiff Marisol Romero is an adult resident of Chicago, Illinois. Romero worked for Molly Maid first as a maid, and then as a team lead, from July 2019 through December 2019.

15.     Plaintiff Jazmín Diaz ("J. Diaz") is an adult resident of Chicago, Illinois. J. Diaz worked for Molly Maid as a maid from August 2017 through January 2020.

16.     Plaintiff Luz Maria Diaz ("L.M. Diaz") is an adult resident of Chicago, Illinois. L. M. Diaz has worked for Molly Maid, first as a maid, and then as a team lead, from early 2016 through the present.

17.     Molly Maid employs two levels of cleaning employees: maids and team leads. Molly Maid compensated both its team leads and maids by paying them a percentage of the flat fee paid to the company on each house they cleaned.

18.     Maids were responsible only for cleaning the houses assigned to them and were paid a lower percentage of flat rate payments than were team leads.

19.     Team leads were responsible for their team's use of the company car, for ensuring that the work performed on a given house was completed satisfactorily, and received a higher

percentage of that flat rate of pay. Team leads do not have supervisory authority or the ability to hire, fire, or discipline other employees. Team leads still perform the same cleaning tasks as "regular" maids.

20. Leyva-Ugalde, Romero, J. Diaz, L.M. Diaz, and the class they seek to represent are current and former cleaning employees for Defendant Molly Maid, who all were maids and team leads. They were full-time employees paid with IRS Form-W-2s, subject to tax withholding, though none were paid for all compensable work time. This includes a failure to pay them for time spent driving between job sites after they had clocked or signed in, time spent waiting for customers, time spent driving to houses they did not actually clean when a customer was out of town, and other incidental time. The Plaintiffs and putative class members also had phantom meal breaks deducted from their hours, received no overtime pay, and earned less than the minimum wage mandated by the Chicago Ordinance and, in some cases, the IMWL. They also were not paid overtime wages for hours worked over 40 in violation of the FLSA, IMWL, and Chicago Ordinance.

21. Within the prior three (3) years, the Plaintiffs, and the class they seek to represent were employed by defendant Molly Maid as "employees" as defined by the FLSA, 29 U.S.C. § 203(e)(1), the IMWL, 820 Ill. Comp. Stat. 105/3(d), and the Chicago Ordinance, Chicago, Ill. Municipal Code, § 1-24-010.

22. Defendant, Molly Maid, is an Illinois corporation, which operates a residential home cleaning service. Molly Maid does business within this judicial district.

23. Defendant Molly Maid is an "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1), engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

24. Defendant Molly Maid was Plaintiffs' "employer" as defined by the FLSA, 29 U.S.C. § 203(d) and the IMWL, 820 Ill. Comp. Stat. § 105/3.

25.     Defendant Molly Maid was Plaintiffs' "employer" as defined by the Chicago Ordinance, as Molly Maid is located in Chicago and the plaintiffs performed work for Molly Maid within Chicago for more than two weeks. Chicago, Ill. Municipal Code, § 1-24-010.

26.     Defendant, Arnold Mayster, is the owner, president, and registered agent of Molly Maid.

27.     Mayster was Plaintiffs' "employer" as defined by the FLSA, 29 U.S.C. § 203(d) and the IMWL, 820 Ill. Comp. Stat. § 105/3.

28.     Mayster was Plaintiffs' "employer" as defined by the Chicago Ordinance, as Mayster's company, Molly Maid, is located in Chicago and the plaintiffs performed work for Mayster and Molly Maid within Chicago for more than two weeks. Chicago, Ill. Municipal Code, § 1-24-010.

## MOLLY MAID'S PAY SCHEME ILLEGALLY DENIES EMPLOYEES' EARNED HOURLY & OVERTIME WAGES

29.     Molly Maid advertises itself as providing cleaning plans for each customers' specific needs, without the need for signed contracts.

30.     Molly Maid requires its cleaning employees, like Leyva-Ugalde, Romero, J. Diaz, L.M. Diaz, and the putative class members to arrive at work by no later than 7:30 a.m.

31.     Molly Maid requires its cleaning employees to hand-write their arrival times on sheets of paper.

32.     Molly Maid separates its cleaning employees into "maids" and "team leads." Molly Maid typically sends teams of two or three to clean homes throughout the day.

33.     Once employees arrive at work, they typically use a company vehicle to drive to the house they are scheduled to clean that day.

34.     Cleaning employees continue to use those vehicles throughout the day, to travel from job site to job site, and back to Molly Maid's main office before clocking out.

35.     Molly Maid would at times require employees to use their personal vehicles to travel to job sites.

36.     On those occasions when Molly Maid required employees to use their personal vehicles, they would offer a flat $10 payment, and on several occasions offered no payment at all.

37.     Molly Maid, without specific written authorization, deducted fines for any parking and/or speeding tickets received in company cars from the Plaintiffs' and putative class members' pay.

Molly Maids Failed to Pay the Required Chicago Minimum Wage

38.     Molly Maid failed to pay the Plaintiffs, and all others similarly situated, an hourly rate that met or exceeded the minimum hourly rate under the IMWL or Chicago Ordinance.

39.     In lieu of paying the Illinois or Chicago minimum wage, Molly Maid engaged in a scheme whereby they paid a percentage of the flat fee charged to customers for each respective house they cleaned. This flat percentage was paid regardless of the time it took to clean a house.

40.     Molly Maids' pay structure resulted in the Plaintiffs, and the putative class members, earning less than the Illinois and Chicago minimum wage.

41.     Molly Maid compensates its cleaning employees by paying them a percentage of the flat fee paid to the company for each house that they clean. Molly Maid did not pay the Plaintiffs or the Class for any of their other compensable hours worked.

42.     Molly Maid typically paid team leads 18% or 21% for work performed on cleaning teams of two. When Molly Maid sent teams of three, team leads are typically paid 16% of the overall fee, and the two maids are paid 13%.

43.     Molly Maid employees, including the Plaintiffs and the putative class members, did not receive an hourly rate of pay or overtime wages. They were not paid for compensable driving time. The only pay they received was for hours specifically spent cleaning houses.

Leyva-Ugalde

44.     From the time of her hiring until her resignation, Leyva-Ugalde typically worked 45 hours per week, and received 18% or 21% of the value of the overall fee paid to Molly Maid for a given house, depending on how many other employees she was working with. On average, her hourly rate fell below the Chicago minimum wage, and she was not paid time-and-a-half for hours worked over 40.

45.     Leyva-Ugalde was paid less than the Chicago minimum wage during the weeks of:

**a.** July 9 through 15, 2018;

**b.** The weeks of July 31 through August 13, 2017 (2 weeks);

**c.** October 23 through 29, 2017;

**d.** December 11 through 17, 2017;

**e.** The weeks of January 15 through 28, 2018 (2 weeks);

**f.** The weeks of February 12 through March 4, 2018 (3 weeks);

**g.** March 12 through 18, 2018;

**h.** October 15 through 21, 2018;

**i.** November 19 through 25, 2018;

**j.** The weeks of December 3 through 16, 2018 (2 weeks);

**k.** The weeks of December 24, 2018 through January 13, 2019 (3 weeks);

**l.** January 21 through 27, 2019;

**m.** The weeks of February 18 through March 3, 2019 (2 weeks);

**n.** April 15 through 21, 2019;

**o.** June 10 through 16, 2019;

**p.** June 24 through 30, 2019;

**q.** The weeks of July 15 through 28, 2019 (2 weeks);

r.  The weeks of September 16 through November 10, 2019 (8 weeks);

s.  The weeks of November 11 through December 1, 2019 (3 weeks); and

t.  December 30, 2019 through January 5, 2020.

46.    Upon information and belief, Leyva-Ugalde was paid less than the Chicago Ordinance's minimum wage on a consistent basis throughout her employment with Molly Maid.

47.    Leyva-Ugalde was paid less than the IMWL during the weeks of February 26 through March 4, and December 24 through 30, 2018.

48.    During all of the weeks Leyva-Ugalde worked set forth in paragraph 44(a) – (t), she worked in excess of 40 hours per week, but was not paid time-and-a-half for her hours worked in excess of 40.

49.    During the week of February 19 through 25, 2018, Leyva-Ugalde had $37.50 deducted from her paycheck for a parking ticket.

50.    Leyva-Ugalde had $175 deducted from her pay for parking and/or speeding tickets during 2019.

Romero

51.    From the time of her hiring until her resignation, Romero typically worked 45 hours per week, and received 18% of the value of the overall fee paid to Molly Maid for a given house. On average, her hourly rate fell below the Chicago minimum wage, and she was not paid time-and-a-half for hours worked over 40.

52.    Romero was paid less than the Chicago minimum wage during the weeks of:

a.  July 22 through July 28, 2019;

b.  July 29 through August 4, 2019; and

c.  August 5 through 11, 2019.

53. Upon information and belief, Romero was paid less than the Chicago Ordinance's minimum wage on a consistent basis throughout her employment with Molly Maid.

54. During all of the weeks Romero worked set forth in paragraph 51(a) – (c), she worked in excess of 40 hours per week, but was not paid time-and-a-half for her hours worked in excess of 40.

55. Upon information and belief, Romero was paid less than the IMWL on multiple occasions throughout the duration of her employment with Molly Maid.

56. Upon information and belief, Romero had payments for parking and/or speeding tickets deducted from her pay in 2019.

J. Diaz

57. From the time of her hiring until her resignation, J. Diaz typically worked 45 hours per week, and was paid 18% of the value of the overall fee paid to Molly Maid for a given house. On average, her hourly rate fell below the Chicago minimum wage, and she was not paid time-and-a-half for hours worked over 40.

58. J. Diaz was paid less than the Chicago minimum wage during the weeks of:

    **a.** All workweeks between December 24, 2018 and February 3, 2019 (6 weeks);

    **b.** The week of February 11 through February 17, 2019;

    **c.** All workweeks between February 25 and March 17, 2019 (3 weeks);

    **d.** All workweeks between March 25 and December 15, 2019 (38 weeks); and

    **e.** The week of January 20 through January 26, 2020.

59. During all of the weeks J. Diaz worked set forth in paragraph 58(a) – (e), she worked in excess of 40 hours per week, but was not paid time-and-a-half for her hours worked in excess of 40.

60. J. Diaz was paid less than the IMWL during the weeks of January 28, March 11, May 27, July 22, August 12, 2019, and January 20, 2020.

61. During six consecutive work weeks, the weeks of August 12 through September 22, 2019, J. Diaz had $25 dollars deducted from her pay for parking tickets.

L. M. Diaz

62. Since her hiring, L.M. Diaz has worked approximately 45 hours per week, and is paid 18% of the value of the overall fee paid to Molly Maid for a given house. On average, her hourly rate fell below the Chicago minimum wage, and she was not paid time-and-a-half for hours worked over 40.

63. L.M. Diaz was paid less than the Chicago minimum wage during the following periods of time:

   **a.** All workweeks between April 3 and June 4, 2017 (8 weeks);

   **b.** All workweeks between June 12, 2017 and May 28, 2018 (51 weeks);

   **c.** The week of June 11 through 17, 2018;

   **d.** All workweeks between June 25, 2018 and June 2, 2019 (49 weeks); and

   **e.** All workweeks between June 10, 2019 and February 16, 2020 (36 weeks).

64. L. M. Diaz was paid less than the IMWL during the weeks of:

   **a.** April 24, 2017;

   **b.** May 15, 2017;

   **c.** May 29, 2017;

   **d.** June 19, 2017;

   **e.** July 10, 2017;

   **f.** July 17, 2017;

   **g.** August 7, 2017;

    **h.**   September 11, 2017;

    **i.**   October 2, 2017;

    **j.**   October 23, 2017;

    **k.**   November 6, 2017;

    **l.**   January 15 – January 29, 2018;

    **m.**   April 16, 2018;

    **n.**   June 11, 2018;

    **o.**   October 8, 2018;

    **p.**   December 10, 2018;

    **q.**   December 2, 2019;

    **r.**   January 27, 2020; and

    **s.**   February 10, 2020.

65.    During all of the weeks L. M. Diaz worked set forth in paragraph 62(a) – (e), she worked in excess of 40 hours per week, but was not paid time-and-a-half for her hours worked in excess of 40.

66.    During the week of July 10 through 16, 2017, L. M. Diaz had $25 deducted from her pay for parking and/or speeding tickets.

67.    The pay deductions for speeding tickets were part of Molly Maids' policy of making unlawful pay deductions without written consent of such deductions, in violation of the

68.    The hourly rate of pay for the Plaintiffs and the putative class members violates the Chicago Ordinance as they were not paid the minimum wage mandated by the Ordinance.[1] Chicago, Ill. Municipal Code, § 1-24-020.

---

[1] The Chicago Ordinance mandated a $10 per hour minimum wage as of July 1, 2016;  $11 per hour as of July 1, 2017; $12 per hour as of July 1, 2018; and a $13 per hour as of July 1, 2019.

69.     The hourly rate of pay for the Plaintiffs and the putative class members also violates the IMWL as they were paid less than the Illinois minimum wage. 820 Ill. Comp. State. 105/4.

Molly Maids Failed to Pay Earned Overtime Wages

70.     The FLSA, IMWL, and Chicago Ordinance each require that that employers pay their covered, non-exempt employees one-and-one-half times their regular hourly rate for each hour worked in excess of 40 hours in a given workweek. 29 U.S.C. §207(a)(1); 820 Ill. Comp. Stat. 105/4a; Chicago, Ill. Municipal Code, § 1-24-040.

71.     The Plaintiffs and putative class members were employed as domestic service employees as recognized under the applicable FLSA regulations, which provide:

> The term domestic service employment means services of a household nature performed by an employee in or about a private home (permanent or temporary). The term includes services performed by employees such as companions, babysitters, cooks, waiters, butlers, valets, maids, housekeepers, nannies, nurses, janitors, laundresses, caretakers, handymen, gardeners, home health aides, personal care aides, and chauffeurs of automobiles for family use. This listing is illustrative and not exhaustive.

29 C.F.R. § 552.3.

72.     As domestic service employees, the Plaintiffs and putative class members were covered by the FLSA, which provides, in relevant part:

> **(l) Employment in domestic service in one or more households**
>
> No employer shall employ any employee in domestic service in one or more households for a workweek longer than forty hours unless such employee receives compensation for such employment in accordance with subsection (a).

29 U.S.C.A. § 207(l).

73.     Because the Plaintiffs and the putative class members were subject to FLSA coverage, they were eligible for overtime pay, and not subject to any overtime exemptions.

74.     However, the Plaintiffs and putative class members were not paid overtime wages, despite consistently and working in excess of 40 hours per week.

75.     Molly Maid's failure to pay Plaintiffs and the putative class members overtime wages for hours worked in excess of 40 violated the FLSA, IMWL, and Chicago Ordinance. 29 U.S.C. §207(a)(1); 820 Ill. Comp. Stat. 105/4(a); Chicago, Ill. Municipal Code, § 1-24-040.

Molly Maids does not Pay Wages for all Compensable Hours Worked

76.     Molly Maids does not pay its employees for time spent driving between job sites after they clock in at the main office, time spent preparing for cleaning jobs after clocking in, time spent waiting for customers who are late to open their homes, or time spent waiting for customers who are unavailable and forget to cancel appointments.

77.     Mayster also instructed Molly Maid's Office Administrator to find 20 to 30-minute periods in employees' schedules during which time they would be driving from one house to another, and to deduct that time as their meal breaks. These breaks were never actually taken.

78.     Molly Maid also failed to pay the Plaintiffs and putative class members for other incidental work time.

79.     Frequently, customers made late cancellations after the Molly Maid employees had already arrived at the job. Molly Maid charged a late-cancelling fee of $90 for each cancellation.

80.     Molly Maid did not pay the Plaintiffs or putative class members for cancellations, meaning they would drive to a customer's house and receive no compensation for driving time or time spent between jobs that day.

81.     When customers were late to open their homes, the Plaintiffs and putative class members were sometimes made to wait up to 2 hours. Molly Maid never paid them for that time.

82.     The time spent driving from job site to job site by the Plaintiffs and putative class members was compensable time under the applicable FLSA regulations, which provide, in relevant part:

> Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked.

Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice. If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time.

29 C.F.R. § 785.38.

83.     Despite driving time being compensable, at no point did Molly Maid pay the Plaintiffs or putative class members for their compensable time spent driving between job sites. The failure to pay the Plaintiffs and the Class for **_all_** of their hours worked violates the FLSA, IMWL,[2] and Chicago Ordinance.[3]

<u>The Wage and Hour Violations and Failure to Pay for all Hours Worked were Willful</u>

84.     Molly Maid improperly deducted work time from recorded work hours to reflect meal breaks that were never taken.

85.     Under the FLSA and IMWL, in order for rest or meal periods to be lawfully deducted from employees' compensable time, they must be bona fide meal periods during which the employee is entirely relieved of their duties.

86.     Mayster ordered the Office Administrator to find time each day, typically 20 – 30 minutes, and record that time for an employee as a meal break. That time was typically time during which the employee was driving from one job site to another.

---

[2] The IMWL incorporates the FLSA's standards. See 820 Ill. Comp. Stat. § 105/1 _et seq._; 820 Ill. Comp. Stat. § 105/4(a); _Morgan v. SpeakEasy, LLC_, 625 F. Supp. 2d 632, 650 (N.D. Ill. 2007) (Courts have held that the IMWL parallels the FLSA, and that the same analysis generally applies to both statutes,) (citing _Ladegaard v. Hard Rock Concrete Cutters, Inc._, 2004 WL 1882449, at *4 (N.D.Ill. Aug. 18, 2004).

[3] The Chicago Ordinance sets forth that overtime pay and minimum wage violations are treated the same as under the IMWL. See Chicago, Ill. Municipal Code, § 1-24-040 ("The Wages set out in Sections 1-24-020 and 1-24-030 are subject to the overtime compensation provisions in the Minimum Wage Law, with the exception that the definitions of "Employer" and "Employee" in this chapter shall apply.").

87.     The Office Administrator was ordered to alter these records even though the time recorded as "break time" was typically work time spent driving from job site to job site and was compensable driving time.

88.     In ordering the Office Administrator to alter these records, Mayster, on behalf of Molly Maid, was deliberately and fraudulently altering employees' pay records to reflect less time worked than they had actually worked.

89.     The altering of records by Molly Maid and Mayster is just further evidence that their FLSA, IMWL, and Chicago Ordinance violations were willful.

90.     The paychecks that Leyva-Ugalde, Romero, J. Diaz, L.M. Diaz, and the putative class members received thus do not accurately reflect their total hours worked, and show that Molly Maid's records are unreliable.

Molly Maid Illegally Prevented Romero from Finding a Replacement Job

91.     Not content to merely underpay Romero, Molly Maid ensured that she would also struggle to find a new job.

92.     After resigning from Molly Maid in December 2019, Romero applied for and was offered a job with another firm, pending a reference check.

93.     When she called the future employer to ask about her start date, she learned that her offer had been revoked due to the negative statements of someone at Molly Maid.

94.     Upon information and belief, Mayster and/or Molly Maid General Manager Marcos Estrada made the negative statements that caused Romero to lose her job opportunity.

Molly Maid & Mayster Refused to Pay a Promised Referral Bonus

95.     When L. M. Diaz was hired, Mayster promised her a $100 bonus for any new employee that she referred to the company who Molly Maid hired, and who worked at the company for at least three months.

96.     L. M. Diaz referred another individual to Molly Maid. Molly Maid later hired the referred potential employee, who remained working for Molly Maid for in excess of three months.

97.     Mayster refused to pay L. M. Diaz for her referral fee, saying that the employee eventually left, so he would not pay.

**COUNT I**

**AGAINST MOLLY MAID & MAYSTER INDIVIDUALLY
COLLECTIVE ACTION – FLSA – UNPAID OVERTIME**

98.     Plaintiffs incorporate Paragraphs 1 – 97 as though fully set forth herein.

99.     This Count arises from Defendant Molly Maid's violation of the FLSA, 29 U.S.C. § 201, *et seq.*, for Defendant's failure to pay Leyva-Ugalde, Romero, and the Class at the overtime rate for all hours worked in excess of 40 per workweek, during, by way of example only, the weeks set forth in paragraphs 45, 50, 55, and 59, respectively. This resulted in their receiving less than the legal overtime rate for her overtime hours.

100.    The FLSA requires an employer to pay its covered, non-exempt employee one and one-half times their regular hourly rate for each hour worked in excess of forty in a workweek. 29 U.S.C. § 207(a)(1).

101.    Individual corporate officers or owners may be held liable for FLSA violations where they possess operational control.

102.    Mayster possesses and exercises the following authority as it relates to Molly Maid:

   a.   The power to hire and fire employees;

   b.   Supervisory authority over employees, including control over their work schedules and conditions of employment;

   c.   Determining employees' methods and rates of pay;

   d.   Maintenance of employees' records.

103. Mayster and Molly Maid were Leyva-Ugalde, and Romero, J. Diaz, L.M. Diaz, and the putative class members' employers, and Leyva-Ugalde, Romero, and the putative class members were Mayster and Molly Maid's employees, within the meaning of the FLSA. 29 U.S.C. § 203(d), (e).

104. Pursuant to 29 U.S.C. § 216(b), this action may be maintained by a plaintiff who has been damaged by a defendant's failure to comply with 29 U.S.C. §§ 206 – 207. Plaintiffs attach as Group Exhibit A their Notices of Consent to Become a Party Plaintiff in a Collective Action under the Fair Labor Standards Act.

105. All past and present hourly employees who have worked for Molly Maid during the previous 3 years as maids and/or team leads are similarly situated to Plaintiffs.

106. Defendant Molly Maid applied its compensation policies, which violate the FLSA, on a company-wide basis, including towards Leyva-Ugalde, Romero, J. Diaz, L.M. Diaz, and the Class.

107. Leyva-Ugalde, Romero, J. Diaz, L.M. Diaz, and the Class are or were engaged in job duties and responsibilities integral and indispensable to the operation of Molly Maid's business, and neither Plaintiffs nor any other member of the Plaintiff Class has received proper overtime compensation for all hours worked over 40 in one workweek.

108. Defendants' failure to pay compensation for all time worked and, as a result, its failure to pay compensation at the overtime rate for all hours worked over 400 per workweek, is a willful violation of the FLSA, since Defendants' conduct shows that they either knew that their conduct violated the FLSA or showed reckless disregard for whether its actions complied with the FLSA.

109. Plaintiffs' experiences are typical of the experiences of the putative class members.

110. For all members of the putative class to become fully aware of their right to join this cause of action, a certain period of time, as determined by this Court, is necessary to send notice to

the entire Class, as well as certain additional time for those members to file consent forms with this Court as provided by 29 U.S.C. § 216(b).

111.    The members of the Class who are still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

## PRAYER FOR RELIEF AS TO COUNT I

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated persons, known and unknown, respectfully requests that this Court enter an order as follows:

a.  Determining that this action may be maintained as a collective action pursuant to the FLSA;

b.  Awarding judgment for back pay equal to the amount of all unpaid wages for the three (3) years preceding the filing of this Complaint, according to the applicable statute of limitations for willful violations of the FLSA;

c.  Awarding liquidated damages in an amount equal to the amount of unpaid overtime compensation found due pursuant to 29 U.S.C. § 216(b);

d.  Awarding prejudgment interest with respect to the amount of unpaid overtime compensation;

e.  Awarding reasonable attorneys' fees and costs incurred in filing this action;

f.  Entering an injunction precluding Defendants from violating the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*; and

g.  Ordering such other and further relief as the Court deems appropriate and just.

## COUNT II

### AGAINST MOLLY MAID & MAYSTER INDIVIDUALLY
### CLASS ACTION – UNPAID OVERTIME – IMWL

112.    Plaintiffs incorporate Paragraphs 1 – 97 as though fully set forth herein.

113.    This Count arises from Molly Maid and Mayster's violations of the IMWL, 820 Ill. Comp. Stat. 105/1, *et seq.*, and their failure to pay Leyva-Ugalde, Romero, J. Diaz, L.M. Diaz, and the Class at the overtime rate for all hours worked in excess of 40 per workweek.

114.    The IMWL requires an employer to pay its covered, non-exempt employee one and one-half times their regular hourly rate for each hour worked in excess of forty in a workweek. 820 Ill. Comp. Stat. 105/3(c), (d).

115.    Molly Maid and Mayster were Leyva-Ugalde's, Romero's, J. Diaz's, L.M. Diaz's, and the putative class members' employers, and Leyva-Ugalde, Romero, J. Diaz, L.M. Diaz, and the putative class members were Molly Maid and Mayster's employees, within the meaning of the IMWL. 820 Ill. Comp. Stat. 105/3(c), (d).

116.    Plaintiffs and the Class were entitled to be compensated for all work performed, including but not limited to time spent driving between jobs and all hours worked over 40.

117.    Molly Maid and Mayster, by their management or agents, violated the IMWL by failing to pay Leyva-Ugalde, Romero, and the putative class members respectively, time-and-a-half for all hours worked over 40 per workweek, during, by way of example only, the weeks set forth in paragraphs 45, 50, 55, and 59, respectively. This resulted in their receiving less than the legal overtime rate for her overtime hours

118.    This action is brought as a class action under Fed. R. Civ. P. 23(b)(3) because the number of individuals who comprise the Class is so numerous that joinder of all Class members is impracticable. While the precise number of members of the Class has not been determined at this time, Plaintiffs believe Defendants have employed in excess of fifty (50) persons who have been subject to Defendants' common unlawful pay practices during the statutory three (3) year period preceding the filing of this Complaint.

119.    Plaintiffs seek certification of this lawsuit as a class action in order that their rights and those of the putative, including all overtime and other wages due, statutory damages, prejudgment interest, and any other damages due, be resolved.

120.    Molly Maid's and Mayster's violations of the IMWL were willful.

121.    The putative class members who are still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

122.    The issues involved in this lawsuit present common questions of law and fact, which predominate over any variations that may exist between members of the Class.

123.    Plaintiffs, the putative class members, and Defendants have a commonality of interest in the subject matter and remedy sought.

124.    Plaintiffs are able to fairly and adequately represent and protect the interests of the members of the Plaintiff Class.

125.    Plaintiffs' Counsel is competent and experienced in litigating large wage and hour class and collective actions.

126.    If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to the members of the Class, to the Court, and to Defendants. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Class is entitled.

127.    As a direct result of Molly Maid and Mayster's violations of the IMWL, Leyva-Ugalde, Romero, J. Diaz, L.M. Diaz, and the Class have been equally affected and suffered lost compensation in the form of overtime pay.

## PRAYER FOR RELIEF AS TO COUNT II

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated persons, known and unknown, respectfully requests that this Court enter an order as follows:

a) Determining that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(3);

b) Appointing Plaintiffs as Class Representatives and their Counsel as Class Counsel;

c) Awarding judgment in an amount equal to all unpaid back pay owed to Leyva-Ugalde, Romero, and all others similarly situated pursuant to the IMWL;

d) Awarding prejudgment interest on the back pay in accordance with 815 Ill. Comp. Stat. 205/2;

e) Awarding statutory damages pursuant to the formula set forth in 820 Ill. Comp. Stat. 105/12(a);

f) Awarding reasonable attorneys' fees and costs incurred in filing this action;

g) Entering an injunction precluding Defendant from violating the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq.*; and

**h)** Ordering such other and further relief as this Court deems appropriate and just.

## COUNT III

### AGAINST MOLLY MAID
### CLASS ACTION – MINIMUM WAGE VIOLATION – CHICAGO ORDINANCE

128.    Plaintiffs incorporate Paragraphs 1 – 97 as though fully set forth herein.

129.    This Count arises from Defendant's violation of the Chicago Ordinance, Ill. Municipal Code, § 1-24 *et seq.* for Molly Maid's failure to pay Plaintiffs and the Class at the Chicago minimum wage rate for all hours worked in excess of 40 per workweek.

130.    The Chicago Ordinance requires that covered employers must pay their employees the greater of the minimum hourly wages set by the IMWL or Chicago Ordinance. Chicago, Ill. Municipal Code, § 1-24-020.

131.    Molly Maid was Leyva-Ugalde's, Romero's, J. Diaz, L.M. Diaz, and the putative class members' employer, and Leyva-Ugalde, Romero, J. Diaz, L.M. Diaz, and the putative class members were Molly Maid's employees, within the meaning of the Chicago Ordinance. Chicago, Ill. Municipal Code, § 1-24-010.

132.    Molly Maid violated the Chicago Ordinance by failing to pay Leyva-Ugalde, Romero, and the putative class members the minimum wage as defined by the Chicago Ordinance for all hours worked.

133.    Molly Maid's violation of the Chicago Ordinance was willful.

134.    This action is brought as a class action under Fed. R. Civ. P. 23(b)(3) because the number of individuals who comprise the Class is so numerous that joinder of all Class members is impracticable. While the precise number of members of the Class has not been determined at this time, Plaintiffs believe Defendant has employed in excess of fifty (50) persons who have been subject to Defendant's common unlawful pay practices during the statutory three (3) year period preceding the filing of this Complaint.

135.    Plaintiffs seek certification of this lawsuit as a class action in order that their rights and those of the Plaintiff Class, including all overtime and other wages due, statutory damages, prejudgment interest, and any other damages due, be resolved.

136.    Leyva-Ugalde, Romero, J. Diaz, L.M. Diaz, and the Class have been equally affected by Molly Maid's failure to properly pay the Chicago minimum wage.

137.    The putative class members who are still employed by Defendant may be reluctant to raise individual claims for fear of retaliation.

138. The issues involved in this lawsuit present common questions of law and fact, which predominate over any variations that may exist between putative class members.

139. Leyva-Ugalde, Romero, J. Diaz, L.M. Diaz, the Class, and Molly Maid have a commonality of interest in the subject matter and remedy sought.

140. Plaintiffs are able to fairly and adequately represent and protect the interests of the members of the Class.

141. Plaintiffs' Counsel is competent and experienced in litigating large wage and hour class and collective actions.

142. If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to the members of the Class, to the Court, and to Defendant. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Class is entitled.

143. As a direct result of Molly Maid's violation of the Chicago Ordinance, Leyva-Ugalde, Romero, J. Diaz, L.M. Diaz, and the putative class members suffered lost compensation in the form of earning less than the minimum wage.

**PRAYER FOR RELIEF AS TO COUNT III**

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated persons, known and unknown, respectfully requests that this Court enter an order as follows:

a. Determining that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(3);

b. Appointing Plaintiffs as Class Representatives and their Counsel as Class Counsel;

c. Awarding judgment in an amount equal to all unpaid back pay owed to Leyva-Ugalde, Romero, and all others similarly situated pursuant to the Chicago Ordinance;

d.   Awarding statutory treble damages pursuant to the Chicago Ordinance, Ill. Municipal Code, § 1-24-110;

e.   Awarding reasonable attorneys' fees and costs incurred in filing this action pursuant to the Chicago Ordinance, Ill. Municipal Code, § 1-24-110; and

f.   Ordering such other and further relief as this Court deems appropriate and just.

## COUNT IV

### AGAINST MOLLY MAID
### CLASS ACTION – UNPAID OVERTIME – CHICAGO ORDINANCE

144.   Plaintiffs incorporate Paragraphs 1 – 97 as though fully set forth herein.

145.   The Chicago Ordinance requires employers to pay their covered, non-exempt employee one-and-one-half times their regular hourly rate for each hour worked in excess of 40 in a workweek in the same manner as required under the IMWL. Chicago, Ill. Municipal Code, § 1-24-040; 820 Ill. Comp. Stat. 105/3(c), (d).

146.   Molly Maid was Leyva-Ugalde's, Romero's, J. Diaz's, and M. Diaz's employer, and Leyva-Ugalde, Romero, J. Diaz, and M. Diaz were Molly Maid's employees, within the meaning of the Chicago Ordinance. Chicago, Ill. Municipal Code, § 1-24-010.

147.   Molly Maid violated the Chicago Ordinance by failing to pay Leyva-Ugalde, Romero, J. Diaz, and M. Diaz the one-and-one-half times wage as defined by the Chicago Ordinance for all hours worked, during, by way of example only, the weeks set forth in paragraphs 45, 50, 55, and 59, respectively. This resulted in their receiving less than the legal overtime rate for their overtime hours.

148.   Molly Maid's violation of the Chicago Ordinance was willful.

149.   As a direct result of Molly Maid's violation of the Chicago Ordinance, Leyva-Ugalde and Romero suffered lost compensation in the form of unpaid overtime wages.

150.   This action is brought as a class action under Fed. R. Civ. P. 23(b)(3) because the number of individuals who comprise the Class is so numerous that joinder of all Class members is

impracticable. While the precise number of members of the Class has not been determined at this time, Plaintiffs believe Defendant has employed in excess of fifty (50) persons who have been subject to Defendant's common unlawful pay practices during the statutory three (3) year period preceding the filing of this Complaint.

151.    Plaintiffs seek certification of this lawsuit as a class action in order that their rights and those of the Plaintiff Class, including all overtime and other wages due, statutory damages, prejudgment interest, and any other damages due, be resolved.

152.    Leyva-Ugalde, Romero, J. Diaz, and M. Diaz, and the Class have been equally affected by Molly Maid's failure to properly pay overtime wages as required under the Chicago ordinance.

153.    The putative class members who are still employed by Defendant may be reluctant to raise individual claims for fear of retaliation.

154.    The issues involved in this lawsuit present common questions of law and fact, which predominate over any variations that may exist between putative class members.

155.    Leyva-Ugalde, Romero, J. Diaz, and M. Diaz, the Class, and Molly Maid have a commonality of interest in the subject matter and remedy sought.

156.    Plaintiffs are able to fairly and adequately represent and protect the interests of the members of the Class.

157.    Plaintiffs' Counsel is competent and experienced in litigating large wage and hour class and collective actions.

158.    If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to the members of the Class, to the Court, and to Defendant. Accordingly, a class action is an appropriate method for the

fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Class is entitled.

## PRAYER FOR RELIEF AS TO COUNT IV

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated persons, known and unknown, respectfully requests that this Court enter an order as follows:

a. Determining that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(3);

b. Appointing Plaintiffs as Class Representatives and their Counsel as Class Counsel;

c. Awarding judgment in an amount equal to all unpaid back pay owed to Leyva-Ugalde, Romero, J. Diaz, L.M. Diaz, and all others similarly situated pursuant to the Chicago Ordinance;

d. Awarding statutory treble damages pursuant to the Chicago Ordinance, Ill. Municipal Code, § 1-24-110;

e. Awarding reasonable attorneys' fees and costs incurred in filing this action pursuant to the Chicago Ordinance, Ill. Municipal Code, § 1-24-110; and

f. Ordering such other and further relief as this Court deems appropriate and just.

## COUNT V

### AGAINST MOLLY MAID & MAYSTER INDIVIDUALLY
### CLASS ACTION – MINIMUM WAGE VIOLATION – IMWL

159. Plaintiffs incorporate Paragraphs 1 – 97 as though fully set forth herein.

160. This Count arises from Molly Maid's violation of the IMWL, 820 Ill. Comp. Stat. 105/1, *et seq.*, for its failure to pay Romero and the Class at the required Illinois minimum wage rate for all hours worked in a given workweek.

161. The IMWL requires an employer to pay its covered, non-exempt employee one and one-half times their regular hourly rate for each hour worked in excess of forty in a workweek. 820 Ill. Comp. Stat. 105/3(c), (d).

162. Molly Maid and Mayster were the Plaintiffs' and the putative class members' employers, and the Plaintiffs and the putative class members were Molly Maid and Mayster's employees, within the meaning of the IMWL. 820 Ill. Comp. Stat. 105/3(c), (d).

163. Plaintiffs and the Class were entitled to be compensated for all work performed, including but not limited to time spent driving between jobs and all hours worked over 40.

164. Molly Maid and Mayster, by their management or agents, violated the IMWL by failing to pay the Plaintiffs, and the putative class members, respectively, for all hours worked, which resulted in their receiving less than the legal state minimum wage for all of their hours worked, during, by way of example only, the weeks set forth in paragraphs 47, 53, 57, and 60, respectively. This resulted in their receiving less than the legal minimum wage rate for their compensable hours worked.

165. This action is brought as a class action under Fed. R. Civ. P. 23(b)(3) because the number of individuals who comprise the Class is so numerous that joinder of all Class members is impracticable. While the precise number of members of the Class has not been determined at this time, Plaintiffs believe Defendants have employed in excess of fifty (50) persons who have been subject to Defendants' common unlawful pay practices during the statutory three (3) year period preceding the filing of this Complaint.

166. Plaintiffs seek certification of this lawsuit as a class action in order that their rights and those of the putative class, including all unpaid hourly wages and other wages due, statutory damages, prejudgment interest, and any other damages due, be resolved.

167. Molly Maid's and Mayster's violations of the IMWL were willful.

168.    The putative class members who are still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

169.    The issues involved in this lawsuit present common questions of law and fact, which predominate over any variations that may exist between members of the Class.

170.    Plaintiffs, the Class, and Defendant have a commonality of interest in the subject matter and remedy sought.

171.    Plaintiffs are able to fairly and adequately represent and protect the interests of the members of the Plaintiff Class.

172.    Plaintiffs' Counsel is competent and experienced in litigating large wage and hour class and collective actions.

173.    If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to the members of the Class, to the Court, and to Defendant. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Class is entitled.

174.    As a direct result of Molly Maid and Mayster's IMWL violations, the Plaintiffs and the Class have been equally affected and suffered lost compensation in the form of overtime pay.

<u>**PRAYER FOR RELIEF AS TO COUNT V**</u>

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated persons, known and unknown, respectfully requests that this Court enter an order as follows:

a)    Determining that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(3);

b)    Appointing Plaintiffs as Class Representatives and their Counsel as Class Counsel;

c) Awarding judgment in an amount equal to all unpaid back pay owed to Leyva-Ugalde, Romero, J. Diaz, L. M. Diaz, and all others similarly situated pursuant to the IMWL;

d) Awarding prejudgment interest on the back pay in accordance with 815 Ill. Comp. Stat. 205/2;

e) Awarding statutory damages pursuant to the formula set forth in 820 Ill. Comp. Stat. 105/12(a);

f) Awarding reasonable attorneys' fees and costs incurred in filing this action;

g) Entering an injunction precluding Defendant from violating the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq.*; and

h) Ordering such other and further relief as this Court deems appropriate and just.

## COUNT VI

### AGAINST MOLLY MAID & MAYSTER INDIVIDUALLY
### CLASS ACTION – WAGE ACT – UNLAWFUL DEDUCTIONS

175. Plaintiffs incorporate Paragraphs 1 – 97 as though fully set forth herein.

176. This Count arises from Molly Maid's violation of the Wage Act, 820 Ill. Comp. Stat. 115/1, *et seq.* for its unlawful pay deductions for parking and/or speeding tickets from the Plaintiffs' and putative class members' pay.

177. The Wage Act prohibits employers from making unauthorized deductions from wages or final compensation unless such deductions are (1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; [or] (4) made with the express written consent of the employee, given freely at the time the deduction is made. 820 Ill. Comp. Stat. 115/9.

178.     Molly Maid and Mayster, by their management or agents, engaged in a company-wide practice of deducting the costs of parking and/or speeding tickets from employees' pay without their written consent, in violation of the Wage Act. 820 Ill. Comp. Stat. 115/9.

179.     By deducting fees for parking tickets from employees' pay, without their consent, Molly Maid made unlawful pay deductions in violation of the Wage Act.

180.     Molly Maid and Maysters' deductions were not required by law, to the Plaintiff or putative class members' benefit, in response to a valid wage assignment or wage deduction order, or made with their express written consent, and therefore violated the IWPCA. 820 Ill. Comp. Stat. 115/9.

181.     Molly Maid and Maysters' deductions were perpetrated during the weeks set forth in paragraphs 49-50, 56, 61, and 66-67.

182.     Upon information and belief, the violations identified in paragraph 181 were part of a company-wide practice and are only representative examples of unlawful violations.

183.     This action is brought as a class action under Fed. R. Civ. P. 23(b)(3) because the number of individuals who comprise the Class is so numerous that joinder of all Class members is impracticable. While the precise number of members of the Class has not been determined at this time, Plaintiffs believe Defendants have employed in excess of fifty (50) persons who have been subject to Defendants' common unlawful pay practices during the statutory three (3) year period preceding the filing of this Complaint.

184.     Plaintiffs seek certification of this lawsuit as a class action in order that their rights and those of the putative class, including all unpaid hourly wages and other wages due, statutory damages, prejudgment interest, and any other damages due, be resolved.

185.     The putative class members who are still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

186. The issues involved in this lawsuit present common questions of law and fact, which predominate over any variations that may exist between members of the Class.

187. Plaintiffs, the Class, and Defendant have a commonality of interest in the subject matter and remedy sought.

188. Plaintiffs are able to fairly and adequately represent and protect the interests of the members of the Plaintiff Class.

189. Plaintiffs' Counsel is competent and experienced in litigating large wage and hour class and collective actions.

190. If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to the members of the Class, to the Court, and to Defendant. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Class is entitled.

191. As a direct result of Molly Maid and Mayster's violations of the Wage Act, the Plaintiffs, and the Class have been equally affected and suffered lost compensation in the form of overtime pay.

## PRAYER FOR RELIEF AS TO COUNT VI

192. WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated persons, known and unknown, respectfully requests that this Court enter an order as follows:

   a. Determining that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(3);

   b. Appointing Plaintiffs as Class Representatives and their Counsel as Class Counsel;

   c. Awarding judgment in an amount equal to all unpaid back pay owed to the Plaintiffs and putative class members, pursuant to the Wage Act;

d.   Awarding statutory damages pursuant to the formula set forth in 820 Ill. Comp. Stat. 115/14);

e.   Awarding reasonable attorneys' fees and costs incurred in filing this action;

f.   Entering an injunction precluding Defendant from violating the 820 Ill. Comp. Stat. 115/1, *et seq.*; and

g.   Ordering such other and further relief as this Court deems appropriate and just.

## COUNT VII

### AGAINST MOLLY MAID & MAYSTER INDIVIDUALLY
### TORTIOUS INTERFERENCE – MARISOL ROMERO

193.   Plaintiff reincorporates Paragraphs 1 – 91 as though fully set forth herein.

194.   In January 2020, Romero had a reasonable expectation of entering into a business or contractual relationship with a new employer.

195.   Molly Maid and Mayster were made aware of this expectation when they were contacted for an employment reference.

196.   Molly Maid and/or Mayster purposefully interfered with that relationship in such a way that it prevented fulfillment of Romero's legitimate expectations.

197.   As a direct result of that interference, Romero suffered damages in the form of lost wages and economic opportunities.

## COUNT VIII

### AGAINST MOLLY MAID & MAYSTER INDIVIDUALLY
### WAGE ACT – LUZ MARIA DIAZ

198.   Plaintiff reincorporates Paragraphs 1 – 91 as though fully set forth herein.

199.   The Illinois Wage Payment and Collection At enforces agreements by employers to pay wages to employees.

200.    Molly Maid was M. Diaz's employer under the Illinois Wage Payment and Collection Act. 820 Ill. Comp. Stat. 115/2.

201.    Molly Maid owner Arnold Mayster promised to pay M. Diaz $100 for each future employee she referred to the company, who Molly Maid ultimately hired, and who remained working for the company for at least three months.

202.    M. Diaz made a referral that resulted in the referred employee being hired by Molly Maid. That referred employee worked for Molly Maid for more than three months.

203.    Molly Maid, through its agent, Mayster, failed to pay M. Diaz her $100 referral fee.

204.    Molly Maid's failure to pay M. Diaz the agreed referral fee violates the Illinois Wage Payment and Collection Act. 820 Ill. Comp. Stat. 115/2.

205.    Molly Maid's violation of the Illinois Wage Payment and Collection Act was willful.

206.    As a direct result of Molly Maid's violation of the Illinois Wage Payment and Collection Act, L.M. Diaz has suffered damages in the form of lost earned compensation.

## PRAYER FOR RELIEF AS TO COUNTS VII and VIII

Marisol Romero and Luz Maria Diaz, respectfully request that this Court enter an order as follows:

a.  Determining that Defendants committed the tort of tortious interference as to Romero;

b.  Ordering payment of Romero's lost past and future earnings as to her lost employment opportunity;

c.  Determining that Defendants violated the Illinois Wage Payment and Collection Act as to L.M. Diaz;

d.  Awarding L.M. Diaz her unpaid compensation, 2% monthly interest penalties, and attorneys' fees; and

e. All other relief this Court deems appropriate.

Dated: March 24, 2020

The Garfinkel Group, LLC
1640 W. Julian
Chicago, IL 60622
Max Barack (IARDC No. 6312302)
(847) 767-0362
max@garfinkelgroup.com
Haskell Garfinkel ((IARDC No. 6274971)
(312) 404-3792
haskell@garfinkelgroup.com

Respectfully submitted,

Camelia Leyva-Ugalde, Marisol
Romero, Jazmín Diaz, and Luz
Maria Diaz, individually and on
behalf of all others similarly situated

/s/ Max Barack
One of the Plaintiffs' Attorneys